[Civ. No. 7572. Third Dist. Aug. 1, 1949.]

MAX BRUNONI et al., Respondents, v. ANTONIO BRUNONI, Appellants.

James F. Boccardo and Jean M. Blum for Appellants.

Fowler & Fowler for Respondents.

PEEK, J.—This action was instituted by certain of the heirs of Mary Brunoni, deceased, to cancel and set aside a deed executed by her conveying certain real property to her

son, Antonio Brunoni. The complaint alleged that the decedent lacked the requisite capacity to execute the deed; that she was incapacitated from properly attending to her business by reason of old age and ill health; that the deed was obtained by the fraud and undue influence of the grantee and that the deed was not delivered to the grantee during the lifetime of the grantor. The foregoing allegations were denied by the answer, and the issues so raised were tried by the court sitting without a jury. The court adopted findings generally in accordance with the allegations of the complaint except that it found the deed was not obtained by the fraud and undue influence of the grantee. The grantee's motion for a new trial was denied and judgment accordingly was entered directing him to convey the property to the executor of the estate of Mary Brunoni, deceased. The present appeal is taken from the judgment so entered.

Appellants contend that there is not sufficient evidence to sustain the findings adopted by the trial court and that the finding that the decedent was incapacitated from properly attending to her business does not support the judgment.

The evidence disclosed by the record herein reveals that Mary Brunoni died on June 23, 1946, at which time she was approximately 80 years old. In 1944 she was afflicted with a disease diagnosed as cancer for which she underwent treatment, but the immediate cause of death according to the death certificate was a coronary occlusion. She resided on a 40-acre ranch near Patterson with her son Antonio, one of the appellants herein, who had purchased the adjoining 40 acres from his father's estate and operated the combined ranches as a single unit. Said appellant paid the taxes upon both properties and the maintenance and other costs in connection with the upkeep of decedent's property and residence.

According to the testimony of her other children, the respondents herein, she suffered intense pain for several year preceding her death, experienced difficulty in breathing and had lapses of memory. While said witnesses testified as to her state of health and memory on various occasions, none of them testified that she was mentally incompetent. As to her mental capacity none of them were more specific in their testimony than to state that she was forgetful. At the time the deed in question was executed the decedent was residing in San Jose with her daughter Mabel, one of the appellants herein. The physician who attended

decedent testified that he found her well nourished, with good color, up and walking around the house, mentally alert and with no disease that indicated imminent death.

It is readily apparent that the foregoing evidence does no more than show that the decedent was aged, suffered pain and was forgetful. ■ The rules governing capacity to execute a deed are in general the same as those governing testamentary capacity. (*Hughes* v. *Grandy,* 78 Cal.App.2d 555 [177 P.2d 939].) ■ ''Old age does not render a person incompetent to execute a deed. Nor will sickness, extreme distress or debility of body affect the capacity of the grantor to make a conveyance if sufficient intelligence remains.'' (9 Cal.Jur., § 22, p. 119. See *Nessen* v. *Nessen,* 218 Cal. 59, 61 [21 P.2d 415].) ■ Hence the foregoing evidence is insufficient as a matter of law to sustain the finding that the decedent lacked the capacity to execute the deed in question. ■ Nor is such finding supported by the further finding that the value of the property was not less than $20,000 since the uncontradicted evidence (*infra*) shows that decedent was advised of its increased value, but nevertheless desired appellant to have said property for $6,500. ■ Likewise the finding that the decedent was incapacitated from properly attending to her business does not support the judgment as it is equally well established that the ability to transact business is not a test of capacity. (*Estate of Sexton,* 199 Cal. 759 [251 P. 778].)

■ Inasmuch as the trial court found against respondents upon the issue of undue influence the sole remaining question concerns the sufficiency of the evidence to sustain the finding that the deed was not delivered.

The record in regard to the execution of the deed discloses that at decedent's request the attorney for appellants herein called upon her at her daughter's home in San Jose on June 17, 1946. The decedent informed him that she desired to make a will leaving her property to her children in equal shares, with a provision that her son Antonio could purchase her ranch for $6,500 which was the identical price paid for the 40-acre ranch which he had purchased previously from his father's estate. When he advised her that the value of the land had increased during the intervening years she stated that she nevertheless wished Antonio to have it for $6,500. The attorney then recommended that decedent sell the property to Antonio for that price and execute a will dividing her estate equally among her children. She assented

to this suggestion and upon the following day executed the will and deed. She also signed a letter instructing the attorney to deliver the deed to Antonio upon his payment of the purchase price. These instructions were subsequently modified by requiring the attorney to obtain a promise from Antonio to support her for the balance of her life as an additional consideration for the conveyance, and by releasing Antonio from any claim for rent for the use and occupancy of her ranch. These instructions were signed by the decedent and together with the deed were delivered to the attorney. On June 20, 1946, Antonio went to the attorney's office and executed a document by which he agreed to purchase the ranch for $6,500 and to perform all of the terms of the instructions previously given the attorney by the decedent. No part of the purchase price was paid by Antonio prior to decedent's death on June 23, 1946, but the full $6,500 was paid to the attorney on July 1, 1946, who in turn delivered the deed to Antonio and on the following day it was recorded.

■ While it is elementary that a deed must be delivered *inter vivos*, the rule is also well established that when a valid escrow agreement is created and the death of the grantor intervenes prior to the delivery by the escrow agent to the grantee, the delivery relates back to the delivery by the grantor to the escrow agent and thus constitutes an *inter vivos* delivery. (10 Cal.Jur. 584.) Thus the real question for consideration is whether or not a valid escrow was created.

■ Again the rule is well established that a valid underlying contract of purchase and sale constitutes a complete and binding escrow when deposited with the escrow holder. (*Rianda* v. *San Benito Title Guar. Co.,* *(Cal.App.) 207 P.2d 624.) In the present case such a contract arose when Antonio accepted his mother's offer to sell by agreeing to all of the terms set forth by her.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

---

*A hearing was granted by the Supreme Court on August 18, 1949.