[Civ. No. 8656.   Third Dist.   Dec. 12, 1955.]

DOROTHY B. TUTTLE, as Administratrix, etc., Appellant, v. FRANCIS MARION BESSEY et al., Respondents.

*Assigned by Chairman of Judicial Council.

Otis D. Babcock for Appellant.

Frank H. McAuliffe and Walter C. Frame for Respondents.

PEEK, J.—The present controversy arises out of two deeds; the first from the decedent to herself and her son, Francis Marion Bessey, as joint tenants; and the second from herself and her son to himself and his wife, Pearl Bessey, as joint tenants. The plaintiff administratrix, who is a granddaughter of the deceased, filed her action to set aside both deeds upon the ground that decedent was of unsound mind at the time of the execution thereof; that defendants paid no consideration therefor; and that the execution was procured by fraud and undue influence. Defendants denied generally the specific allegations of plaintiff's complaint. At the conclusion of the trial on the issues so joined, the court found in favor of defendants. Plaintiff's appeal from the judgment is essentially an attack upon the sufficiency of the evidence and appears to be without merit.

The record shows that when the deeds were executed, the decedent was 85 years of age. Her eyesight was poor, and she wore a hearing aid. She remembered anniversaries and birthdays, wrote letters to friends and relatives until her last illness, kept her appointments, was active and attended church regularly. A neighbor, Riordan Hayer, testified that decedent visited him about once a month; that her memory was better than average for her age; that in his opinion she knew the

effect of a deed; and that she told him in 1942 that the property in question was to go to her son, Francis, when she died. A grandnephew, Richard Bessey, testified he saw her for several hours at a time once or twice a week; that her memory was good and that she knew the effect of a deed; that she had told him on several occasions that she was going to arrange matters so that the property in question would not be willed, because wills could be broken, and that the property would go to her son. A neighbor, Mrs. Russell, testified that decedent was alert to her last illness, and she believed her to be competent. Mrs. Russell's husband, LeRoy, testified that he had known her for several years, saw her daily and talked with her approximately twice a week. To him her memory seemed about the same as that of many older persons, and in his opinion she knew what she was doing. She told him that she originally owned 10 acres; that a daughter, Mrs. Cory, had received 5 acres; that a stepson, Jimmy, had received 3 acres; and on several occasions she had told him that the defendant, her son, would get the house and the 2 acres which were left. The witness further testified that decedent asked him if he knew where a deed could be prepared, and together they went to a realtor's office where the second deed was prepared and signed; that the realtor asked decedent, following the preparation of the deed, if that was what she wanted, and she replied that it was.

The plaintiff now argues that the summarized evidence is insufficient to support the judgment, because defendants failed to sustain the burden imposed upon them to prove good faith, adequate consideration and independent advice in procuring the property.

■ As the court noted in *Brunoni* v. *Brunoni*, 93 Cal. App.2d 215, 218 [208 P.2d 1028], "The rules governing capacity to execute a deed are in general the same as those governing testamentary capacity." ■ Examining the record in light of this rule, we find no evidence other than the conflicting evidence given by plaintiff that the decedent at the time of executing the conveyances was not of sufficient mental capacity to understand the nature of her act, the extent and character of her property and the relationship to persons who were the natural objects of her bounty. She had stated on numerous occasions that she intended to give the property in question to her son, the defendant; she knew the extent of her property; she did convey this property to her son and his wife; she asked of a neighbor where the deed could be pre-

pared, and when asked by the realtor if that was what she wanted, she replied in the affirmative; she had recognized her other children; she knew what she was doing and she knew the effect of a deed. This evidence was more than ample to sustain the findings of the trial court.

■ Although the complaint alleged that defendants procured the execution of the deeds with the intention of cheating and defrauding Francis' brothers and sisters, it does not appear from the settled statement that any brother or sister was in fact excluded or was in any way injured by defendants' receiving the deeds in question from Francis' mother. All of them had previously received property from her. Even if the facts were as plaintiff contends, the record shows no evidence of solicitation, inducement or influence to support an inference of undue influence on the part of defendants in obtaining the deeds from decedent. No showing is made that respondents exercised any pressure whatsoever on the mind of decedent; in fact all of the evidence is to the contrary. The voluntary character of her acts in executing the deeds is amply shown by the statements made by her to her neighbors and to her grandnephew. (*Goldman* v. *Goldman,* 116 Cal. App.2d 227 [253 P.2d 474].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.